## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

**EMPIRE FIRE AND MARINE
INSURANCE COMPANY**
13810 FNB Parkway,
Omaha, NE 68154

      v.

**INTEK AUTO LEASING, INC.**
152 Eagle Rock Avenue
Roseland, NJ 07068

and

**JOSE CRUZ and
F. CRUZ TRANSPORT LLC**
520 N. 13th Street
Newark, NJ 07107

         Defendants,

and

**ROBERT HINER and
JANET HINER, h/w**
270 Hoover Avenue,
Bloomfield, NJ 07003

       Nominal Defendants

CIVIL ACTION

NO. _____

## COMPLAINT

AND NOW COMES the plaintiff, EMPIRE FIRE AND MARINE INSURANCE COMPANY, by and through its attorneys, Bodell Bove, LLC, to file this Complaint for declaratory relief, and in support thereof, sets forth and avers the following:

**PREAMBLE**

In this action, plaintiff, Empire Fire and Marine Insurance Company seeks an adjudication of its rights and obligations under a certain Contingent, Excess and Interim Commercial Automobile Insurance Policy issued to the lessor of a commercial dump truck which, while being operated by the lessee, was involved in a hit and run accident with a pedestrian, Robert Hiner.  The accident, which occurred on January 5, 2015, gave rise to a civil action by Mr. Hiner and his wife, Janet Hiner, seeking damages from the lessor of the dump truck, Intek Auto Leasing, Inc. ("Intek"), and the lessee and driver of the dump truck, Jose Cruz, and his company, F. Cruz Transport, LLC (collectively, "Cruz"), styled *Robert Hiner and Janet Hiner, h/w v. Jose Cruz et al.*, Superior Court Essex County (Law Div.) No. ESX-L-245816 (the "*Hiner* Litigation").

Empire Fire and Marine Insurance Company brings this action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and various statutory, codified, and common laws of the United States of America and the State of New Jersey seeking, *inter alia*: (a) a declaration that its insuring obligations relative to the Cruz's liability in the *Hiner* Litigation is, at most, Fifteen Thousand Dollars ($15,000.00), (b) a declaration that its insuring obligations relative to Intek's liability as the lessor of the dump truck, if any, is Two Million Dollars ($2,000,000.00), and (c) a declaration that it has no insuring obligation based upon or arising out of Intek's contractual liability, if any, to procure or maintain liability insurance for the lessee under Intek's lease agreement with Cruz.

**THE PARTIES**

1.      Plaintiff, Empire Fire and Marine Insurance Company ("Empire"), is a Nebraska corporation engaged in the insurance business with a statutory home office located at 13810 FNB

Parkway, Omaha, Nebraska 68154 and its principal place of business located at 1299 Zurich Way, Schaumburg, IL 60196. Empire is a citizen of Nebraska and Illinois.

2.    Defendant, Intek Auto Leasing, Inc. ("Intek"), is a New Jersey corporation engaged in the commercial auto leasing business, with its principal place of business located at 152 Eagle Rock Avenue, Roseland, NJ 07068. Intek is a citizen of New Jersey.

3.    Defendant, Jose Cruz is an individual and resident of the State of New Jersey who may be served at 520 N. 13th Street, Newark, NJ 07107. Jose Cruz is a citizen of New Jersey.

4.    Defendant, F. Cruz Transport LLC is, upon information and belief, a limited liability company organized and existing under the laws of the State of New Jersey whose members are all citizens of the State of New Jersey, and has its principal place of business located at 520 N. 13th Street, Newark, NJ 07107. F. Cruz Transport LLC is a citizen of New Jersey.

5.    Except as otherwise indicated, Jose Cruz and F. Cruz Transport LLC are collectively referred to as "Cruz" in this complaint.

6.    Nominal defendants, Robert Hiner and his wife, Janet Hiner, are individuals residing in the State of New Jersey at the above captioned address, and are the plaintiffs in the underlying civil action styled *Robert Hiner and Janet Hiner, h/w v. Jose Cruz et al.*, Superior Court Essex County (Law Div.) No. ESX-L-245816 (the "*Hiner* Litigation"). Robert Hiner ("Hiner") and Janet Hiner are citizens of New Jersey. No cause of action or claim is asserted against Robert Hiner and Janet Hiner in this action, and they have been named solely as interested parties to the declaratory relief sought in this complaint.

<u>JURISDICTION AND VENUE</u>

7.      This court has original jurisdiction under 28 U.S.C. §1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

8.      Venue is proper in the United States District Court for the District of New Jersey under 28 U.S.C. §1391, because, *inter alia*, a substantial part of the events or omissions giving rise to the claim, including the loss which is at issue in the *Hiner* Litigation, took place within this District, and each of the defendants reside in this District for purposes of venue under 28 U.S.C. §1391.

<u>FACTS</u>

A.      **<u>The Dump Truck Lease</u>**

9.      In or about March of 2014, Cruz located and selected a certain commercial dump truck, identified more specifically as a 2006 Peterbuilt Model 357 Dump Truck, bearing VIN lNPALU0X86N897l 70 (the "Dump Truck"), which at the time was owned by a quarry business, C.Q.M., LLC, 909 Prospect St., Naugatuck, CT 06770.

10.     Cruz thereafter agreed to enter into a Closed End Motor Vehicle Lease ("Lease") respecting the Dump Truck, a true and correct copy of which is attached as **Exhibit "A"**.

11.     On or about March 19, 2014, Intek arranged for financing and purchased the Dump Truck from C.Q.M., LLC.  True and correct copies of the sales documents and transfer of Connecticut title to the Dump Truck are collectively attached as **Exhibit "B"**.

12.    At the time Intek purchased the Dump Truck from C.Q.M., LLC, the Dump Truck had passed its annual inspection as required by federal law.  A true and correct copy of the October 4, 2013 Annual Vehicle Inspection Report is attached as **Exhibit "C"**.

13.    The Dump Truck was subsequently titled in Intek's name, subject to the financing company's interests, and registered in the State of New Jersey.  A true and correct copy of the New Jersey Certificate of Title is attached as **Exhibit "D"**.

14.    On March 26, 2014, Cruz executed the Lease and took possession of the Dump Truck.  See Lease (Exh. "A").

15.    In the Lease, Cruz, *inter alia*, (a) acknowledged that the Dump Truck was selected by the Lessee (Cruz), (b) attested to its delivery in "as is" condition, (c) affirmed that Lessor (Intek) is neither the manufacturer, distributor, nor supplier of the Dump Truck, has not selected it, and has no control over or knowledge of or familiarity with the condition, capacity, functions or other characteristics of the vehicle, and has made no warranties of merchantability or fitness of any kind regarding the vehicle, whether express, implied or statutory, and (d) agreed that Cruz would maintain insurance on the vehicle:

Lessee acknowledges that: (1) Lessee [Cruz] has selected both the Vehicle and the Supplier(s) of Vehicle and directed Lessor to purchase the Vehicle from Supplier(s); (2) Lessee has fully inspected the Vehicle that has heretofore been delivered to Lessee by Supplier(s); (3) the Vehicle has been satisfactorily delivered and the Vehicle and Lessor are in full compliance with the terms of the above Lease; (4) the Vehicle has not been delivered to Lessee on a trial basis; (5) the Vehicle is in good condition (operating or otherwise) and repair; (6) Lessee accepts the Vehicle "as is" and "where is"; (7) Lessor is neither the manufacturer, distributor, nor supplier of the Vehicle, has not selected it, and has no control over or knowledge of or familiarity with the condition, capacity, functions or other characteristics of the Vehicle, and Lessor makes no warranties of merchantability or fitness of any kind regarding the Vehicle described in the Lease, whether express, implied or statutory, and that any warranties made to Lessor by the Supplier(s) is/are assigned to Lessee; and Lessee further understands that, despite the disclaimers herein, Lessee is not precluded in any way from asserting or enforcing any claim which Lessee may have against the Supplier(s); (8) all payments by Lessee will be made to Lessor or its assignee; (9) any rights Lessee may have against the Supplier(s) or manufacturer(s) of the Vehicle will be

asserted only, if at all, against them and will not be asserted against Lessor or its assignee, and Lessee's obligation to make all Lease payments to Lessor or its assignee is absolute and unconditional and without defenses, including but not limited to abatement, set-off, counterclaim, crossclaim, defense, or deduction and Lessee hereby waives any and all such defenses, set-offs or counterclaims; (10) Lessor shall not be responsible for performance of service contracts or other agreements or for default in performance of any such agreements; Lessee fully understands and agrees that deficiency or failure of any Vehicle, service, or mis[-]operation of any kind whatsoever, is not and shall not be grounds for any non-fulfillment, delay or reduction of Lessee's obligations under the Lease. (11) Lessee may not, without Lessor's prior written approval, add to, delete from, or substitute other items of Vehicle for, the above items, or make adjustments with the Supplier(s) or relocate the Vehicle; (12) Lessor has acquired the Vehicle in connection with this Lease.  Lessee is aware that Lessee may have rights under the contract by which Lessor has acquired the Vehicle and that Lessee has the right to contact the Supplier(s) for a description of any such rights.

By signature below, Lessee authorizes and directs Lessor to pay the Supplier(s) for the Vehicle. A facsimile copy of the signature of Lessee shall be sufficient for Lessor's reliance upon this Acknowledgment and Acceptance and the unfettered enforcement of this Acknowledgment and Acceptance as if original signature.

I UNDERSTAND THAT TO PROVIDE PROTECTION FROM SERIOUS FINANCIAL LOSS, SHOULD AN ACCIDENT OCCUR, MY LEASE CONTRACT REQUIRES THE VEHICLE TO BE CONTINUOUSLY COVERED WITH INSURANCE AGAINST THE RISKS OF FIRE, THEFT AND COLLISION, AND FAILURE TO PROVIDE SUCH INSURANCE GIVES THE LESSOR THE RIGHT TO DECLARE THE ENTIRE UNPAID BALANCE IMMEDIATELY DUE AND PAYABLE.  ACCORDINGLY, I HAVE ARRANGED FOR THE REQUIRED INSURANCE THROUGH THE INSURANCE COMPANY SHOWN BELOW AT MY EXPENSE AND HAVE REQUESTED TO MY AGENT TO NOTE AND PROTECT THE INTEREST OF THE LESSOR. ...
...
Insurance Coverage:

| | |
|---|---|
| Personal Injury Liability | $1,000,000.00/$1,000,000.00 |
| Property Damage liability | $1,000,000.00 |
| Collision (Deductible Amount) | $1,000.00 |
| Comprehensive Fire/Theft (Deductible Amount) | $1,000.00 |

See Lease (Exh. A) at Agreement to Provide Insurance/Acknowledgment and Acceptance of Vehicle.

16.     The Federal Consumer Lease Act Disclosures to the Lease similarly note the required insurances to be maintained by Cruz:

10.     The following type and amounts of Insurance will be acquired in connection with this lease:

| | |
|---|---|
| Personal Injury Liability | $1,000,000.00/$1,000,000.00 |
| Property Damage liability | $1,000,000.00 |
| Collision (Deductible Amount) | $1,000.00 |
| Comprehensive Fire/Theft (Deductible Amount) | $1,000.00 |

*Id.* at Closed-End Motor Vehicle Lease Disclosures.

17.     The Lease further mandated the required insurances to be continuously maintained by Cruz during the term of the lease, endorsed to include Intek as an additional insured:

INSURANCE FOR THE VEHICLE:

Lessee will be responsible for providing and maintaining the following insurance coverages in the minimum amounts and with the maximum deductibles listed below:  Personal Injury Liability:  $1,000,000.00/$1,000,000.00 ; Property Damage Liability: $1,000,000.00; Collision (Deductible): $1,000.00; Comprehensive Fire and Theft (Deductible): $1,000.00. If, for any reason, you fail or refuse to secure insurance coverage on amounts stated above or cease to maintain such coverage during the term of this Lease, Lessor shall supply the insurance for Lessee. The Lessee shall be obliged to reimburse Lessor for an amount of Lessor's cost of such insurance plus thirty (30%) percent thereof, as additional rent, and added to your monthly payment. Any increase in the cost of insurance during the term of this Lease will be paid by Lessee in the form of higher monthly payments.

You agree to furnish to Lessor all information necessary to maintain or apply for insurance, including the driver license numbers of all persons who operate the Vehicle.  It shall be your obligation to have the insurance policies name Lessor and Lessee as the insured on the policy, and also name Lessor as the exclusive loss payee of any insurance proceeds payable as a result of a claim or otherwise.  Failure to name Lessor as an additional insured and loss payee for the duration of this Lease shall constitute an event of default.  The policies must also comply with applicable state law and provide all coverage required by law including coverage for uninsured motorist(s).  Lessee agrees that Lessor will be entitled to make and settle all claims, receive payment of all Proceeds and endorse and sign all documents, drafts and checks in Lessee's name with respect to these claims. Lessee must also provide and pay for any necessary Worker's Compensation Insurance.  Lessee agrees to immediately report to Lessor and the insurance company, in writing, any accident, claim or damage involving the Vehicle and any lawsuit involving the Vehicle.

At the start of this Lease and on each anniversary date, Lessee shall supply Lessor with copies of the insurance policies or certificates of insurance. If Lessee does not provide the requisite insurance coverage as described in this paragraph or pay for adequate insurance, Lessee shall be in default of this Lease.

If I choose to purchase a damage waiver from you to indemnify me for any gap liability which arises as a result of this lease agreement, I will pay you $488.00 at the beginning of this lease for the damage waiver.  I understand that this is not required as part of this lease, but an option that might minimize my liability.

*Id.* at Closed End Motor Vehicle Lease Agreement at ¶7.

18.     Under the Lease, Cruz agreed to indemnify Intek for losses and casualty claims arising out

of Cruz's operation of the Dump Truck:

LESSEE'S INDEMNIFICATION OF LESSOR AND HOLD HARMLESS AND/OR LESSOR'S ASSIGNMENT:

Lessee agrees to Indemnify and hold harmless and to pay and reimburse Lessor for any fines, penalties, damages and expenses (including traffic and parking violations) involving the Vehicle. Lessee also agrees to pay and reimburse Lessor for any damages and expenses (including all attorney's fees) resulting from any lawsuits and claims involving the Vehicle or by Lessee's violation of any law, rule or regulation or violation of this Lease.  The lessee shall also reimburse Lessor for all attorneys fees incurred by Lessor with respect to such fines, damage, expense and for attorneys fees with respect to [sic .]

*Id.* at ¶12.

19.     The Lease confers responsibility for the continued maintenance of the Dump Truck on the

lessee, Cruz:

Lessee agrees, at Lessee's expense to have the vehicle serviced in accordance with the manufacturer's recommendations, to maintain the vehicle in good running order and condition and to have all necessary repairs made. ... The Lessor requires the Lessee provide all maintenance required for this vehicle by the manufacturer. The Lessee shall be responsible for all costs in connection with the use and operation of the vehicle, including but not limited to gasoline, oil, lubrication, repairs, maintenance, tires, storage, ... The Lessor does not provide any maintenance for this vehicle.  Lessor does not warrant the condition of this vehicle.

*Id.* at ¶9.

20.     At the time the Dump Truck was leased, Cruz represented to Intek that Cruz maintained

comprehensive automobile liability coverage under an insurance policy issued by Drive New

Jersey (a Progressive Company) and brokered by Abbott Insurance Agency, effective

-8-

October 4, 2013 to October 4, 2014, with liability limits of $1,000,000 per accident, identifying Intek as an additional insured.  True and correct copies of Certificates of Insurance respecting the Drive New Jersey policy are collectively attached as **Exhibit "E"**.

21.     On or about May 2, 2014, Cruz arranged for and secured an annual vehicle inspection of the Dump Truck.  The Dump Truck passed its annual inspection as required by federal law. True and correct copies of the May 2, 2014 Annual Vehicle Inspection Report and placard evidencing the next annual inspection date on May 30, 2015, are attached as **Exhibit "F"**.

22.     Upon information and belief, at some point following the expiration of the Drive New Jersey policy, Cruz obtained comprehensive automobile liability coverage under an insurance policy issued by American Millennium Insurance Company and brokered by Generazio Associates Inc., effective May 22, 2014, with liability limits of $1,000,000 per accident (the "American Millennium Policy").  A true and correct copy of the Insurance Identification Card issued by  American Millennium Insurance Company respecting coverage for the Dump Tuck under the American Millennium Policy is attached as **Exhibit "G"**.

23.     Upon information and belief, the American Millennium Policy was subsequently cancelled by American Millennium Insurance Company.

24.     Notice of the cancellation of the American Millennium Policy was not communicated to Intek by Cruz, American Millennium Insurance Company, Cruz's broker, Generazio Associates Inc., or anyone else.

25.     After the accident which is the subject of the *Hiner* Litigation, Generazio Associates Inc. issued a Certificate of Insurance identifying the American Millennium Policy and reflecting that the American Millennium Policy had been cancelled effective July 28, 2014.  A true and

correct copy of the February 3, 2015 Certificate of Insurance issued by Generazio Associates Inc. is attached as **Exhibit "H"**.

**B.**     **The *Hiner* Litigation**

26.     On or about January 5, 2015, Jose Cruz was operating the Dump Truck at or about the intersection of Franklin Street and Municipal Plaza East in Bloomfield, New Jersey, when the Dump Truck struck a pedestrian, Robert Hiner.

27.     Cruz left the scene of the accident and was later apprehended and arrested.

28.     On April 7, 2016 Robert Hiner and his wife, Janet, filed a civil action in the Law Division of Essex County, NJ at Docket No. ESX-L-245816 (the "*Hiner* Litigation") against Jose Cruz, F. Cruz Transport, LLC, and Intek, among others.  A true and correct copy of the *Hiner* Litigation Complaint is attached hereto as **Exhibit "I"**.

29.     The complaint alleges that Cruz negligently operated the subject Dump Truck at the time of the accident by, *inter alia*, making a left hand turn north on Franklin Street and "forcefully striking" Hiner, who was crossing Franklin Street, westbound, within the crosswalk.  *Hiner* Litigation Compl. at ¶¶2, 3, 5.

30.     It is alleged that the Dump Truck was "carrying an unlawful and overweight cargo of stone thereby greatly increasing the dangers inherent in its operation."  *Id.* at ¶4.

31.     In the First and Second Counts of the complaint, claims for negligence and vicarious liability are asserted against Jose Cruz and his employer, F. Cruz Transport, LLC, respectively.  *Id.* at ¶¶1-13.

32.     Intek, incorrectly identified as "Intek Trucking and Equipment Leasing" in the *Hiner* Litigation Complaint, is named as a defendant in the Fifth Count for "Nuisance/Negligence"

-10-

premised upon allegations that "[t]he subject dump truck was a nuisance per se due to its extraordinarily dangerous condition at the time of its operation," and that the defendants "knew or should have known of the dangerous, illegal and unsafe operation of the dump truck, negligently allowed and entrusted same to be used on the public roadways, and should have taken steps to prohibit same from being operated on public roadways to the detriment to the general public and to plaintiff Robert Hiner." *Id.* at ¶¶26, 27.

33.     In the Sixth Count it is alleged that Intek is liable in negligence for the "Lease of Unsafe Truck," premised upon its alleged "fail[ure] to properly inspect the subject dump truck, as a result of which said entity leased an extraordinarily unsafe dump truck which resulted in an undue risk of injury to others, including plaintiff Robert Hiner." *Id.* at ¶¶30-33.

34.     In the Seventh Count, styled "Failure to Maintain Required Insurance," it is alleged that Intek, as the owner and lessor of the Dump Truck, was required by law to obtain adequate insurance coverage for the Dump Truck. *Id.* at ¶¶35-38.

35.     In the Tenth Count, a claim for punitive damages is asserted against Cruz and Intek, among others, premised upon willful and wanton conduct and reckless disregard for the safety of others, including Robert Hiner. *Id.* at ¶¶50, 51.

36.     In the Eleventh Count, Ms. Hiner presents a *per quod* claim against Intek and Cruz, among others. *Id.* at ¶¶52-54.

**C.     The Empire Contingent, Excess and Interim Commercial Automobile Insurance Policy**

37.     Empire issued Contingent, Excess and Interim Commercial Automobile Insurance Policy RSF5525002-02, effective June 1, 2014 to June 1, 2015, to Intek (the "Empire Policy"). A true and correct copy of Empire Fire and Marine Insurance Company Contingent, Excess

and Interim Commercial Automobile Insurance Policy RSF5525002-02 is attached hereto as **Exhibit "J"**, and incorporated fully herein by reference pursuant to Fed. R. Civ. P. 10(c).

38.     The Empire Policy declares bodily injury liability limits of $15,000/$30,000, identifies covered "autos" as Symbol 10 only, and is governed by a Business Auto Coverage Form (CA 0001 (3/10)), subject to a Contingent and Excess Liability Coverage with Interim Liability and Physical Damage Coverage endorsement (EM 01 60 CW (06-10)).  *Id.*

39.     The Empire Policy affords liability coverage in accordance with the following insuring grant:

SECTION II - LIABILITY COVERAGE

A.     Coverage

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".  We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense".  However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply.  We may investigate and settle any claim or "suit" as we consider appropriate.  Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

Empire Policy (Exh. J) at Business Auto Coverage Form (CA 0001 (3/10)), Section II.A.

40.     Throughout the Empire Policy, the words "you" and "your" refer to the Named Insured, Intek.  *Id.*

41.     The phrase covered "auto", within the meaning of this insuring grant, is defined as:

A. The following is added to Section I-Covered Autos, A. Description Of Covered Auto Designation Symbols:

**Symbol 10          Description Of Covered Auto Designation Symbol**

10      Leased "Auto"(s).  Only those "autos" described as follows:

(a)     Any "auto" you [Intek] lease to others for a period of not less than 12 consecutive months under a written lease agreement that requires the lessee to provide primary liability insurance for you;

(b)     Any substitute or replacement "auto" for an "auto" described in (a) above, provided that such "auto" is leased to a lessee of an "auto" leased from you for a period of not less than 12 consecutive months under a written lease agreement, that requires the lessee to provide primary liability insurance for you;

(c)     "Autos" leased, or to be leased from you but only between the time they are registered and/or titled in your name and the time of delivery to any lessee or his/her/its representative;

(d)     "Autos" titled and/or registered in your name and leased by you to any lessee, but only between the time that such an "auto" is surrendered by the lessee, or his/her/its representative, to you or your representative, and the time that any such "auto" is sold and legal transfer of ownership has been consummated.

Empire Policy (Exh. J) at Declarations, Item 8, Contingent and Excess Liability Coverage with Interim Liability and Physical Damage Coverage endorsement (EM 01 60 CW (06-10)) at ¶A.

42.     For purposes of the insuring agreement, the term "insured", with regard to a covered "auto" is defined under the policy as:

1.      Who Is An Insured

The following are "insureds":

a.      You [Intek] for any covered "auto".

b.      Anyone else while using with your [Intek's] permission a covered "auto" [Intek] own, hire or borrow except:

(1)     The owner or anyone else from whom you hire or borrow a covered "auto".

This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2)    Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3)    Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4)    Anyone other than your "employees"or partners while moving property to or from a covered "auto".

(5)    A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

(6)    (a)    any lessee or sub lessee;
           (b)    Any "employee" or agent of any lessee or sub lessee;
           (c)    Any family member or member of the household of any lessee or sub lessee;
           (d)    Any other person or organization using a covered "auto" with the permission of any person or organization included in (a), (b), or (c) above.

But, these exceptions do not apply if, by law, this policy is required to provide liability insurance to anyone other than as described in b.(4) above, or to any person or organization described in b.(6) above.

c.    Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

*Id.* at Business Auto Coverage Form CA 0001 (03/10), Section II.A.1, *as amended by*

Contingent and Excess Liability Coverage with Interim Liability and Physical Damage

Coverage endorsement (EM 01 60 CW (06-10)), ¶B.

43.    The Empire Policy's declared bodily injury liability limits of $15,000/$30,000 (Declarations,

Item 3) apply to a lessee who qualifies as an "insured," consistent with N.J. Stat. § 45:21-3

and N.J. Stat. Ann. § 39:6B-1, and a scheduled $2 Million limit applies to the Named Insured

(Intek) in accordance with the following provisions of the Contingent and Excess Liability

Coverage with Interim Liability and Physical Damage Coverage endorsement:

-14-

C.      Changes to Section II - Liability Coverage:

1.      Paragraph C. Limit Of Insurance is replaced with the following:

...

c.      For the lessee, any sub lessee, or any "employee" or agent of either, or any person other than you, your "employees" or agents that this policy is required by law to cover, the Limit of Insurance for Liability Coverage shall be the minimum limit required by any applicable compulsory insurance or financial responsibility law of the jurisdiction where the covered "auto" is being used.  The Limit of Insurance is shown in Item 3. of the Declarations.

d.      For you, your "employees" or agents, the Limit of Insurance is the amount shown in the Schedule above [$2 Million].

Empire Policy, Contingent and Excess Liability Coverage with Interim Liability and Physical Damage Coverage endorsement (EM 01 60 CW (06-10)), ¶C.

44.      The Empire Policy does not insure liability assumed by the Named Insured (Intek) under a contract:

B.      Exclusions

This insurance does not apply to any of the following:

...

2.      Contractual Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

a.      Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

b.      That the "insured" would have in the absence of the contract or agreement.

Empire Policy, Business Auto Coverage Form CA 0001 (03/10) at Section II.B.2 (hereinafter, the "Contractual Liability Exclusion").

45.      The only exception to the Contractual Liability Exclusion pertains to a liability assumed in an "insured contract" in which the Named Insured assumes the "tort liability of another" or where that Named Insured leases an auto another:

"Insured contract" means:

...

5.      That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement;

6.      That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your "employees", of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your "employees" to pay for "property damage" to any "auto" rented or leased by you or any of your "employees".

Empire Policy, Business Auto Coverage Form CA 0001 (03/10) at Section V.H.

## COUNT I
## DECLARATORY RELIEF
## AGAINST JOSE CRUZ AND F. CRUZ TRANSPORT, LLC
### (Limits of Liability Coverage)

46.     Plaintiff, Empire Fire and Marine Insurance Company incorporates by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

47.     The Empire Policy provides certain contingent, excess and interim liability coverage for qualifying insureds respecting a covered auto.

48.     The Dump Truck involved in the underlying accident would qualify as a Symbol 10 covered auto under the Empire Policy if was leased by Intek to another for a period of not less than 12 consecutive months under a written lease agreement that requires the lessee to provide primary liability insurance for Intek.  See Empire Policy at Declarations Item and Contingent and Excess Liability Coverage with Interim Liability and Physical Damage Coverage endorsement (EM 01 60 CW (06-10)) at ¶A (Description Of Covered Auto Designation Symbols), 10(a) ("Any 'auto' you lease to others for a period of not less than 12 consecutive

-16-

months under a written lease agreement that requires the lessee to provide primary liability insurance for you").

49.    In other words, coverage is, in the first instance "contingent" upon a lease agreement which specifies that Intek is afforded primary liability insurance by the lessee.  It is "excess" when that occurs, and is interim (*i.e.*, before delivery and after return of the auto) when it does not. See Contingent and Excess Liability Coverage with Interim Liability and Physical Damage Coverage endorsement (EM 01 60 CW (06-10)) at ¶A (Description Of Covered Auto Designation Symbols), 10(c) and (d) (describing interim coverage), and ¶E ("The insurance afforded by this endorsement is excess over any other collectible insurance whether primary, excess, contingent or self insurance, unless such insurance is specifically written to apply in excess of this policy.").

50.    The Lease respecting the Dump Truck required that Cruz name Intek as an additional insured, but not on a primary basis.

51.    To the extent it is determined that the Dump Truck nonetheless qualifies as a covered auto under the Empire Policy, then coverage would be implicated under the policy for a lessee who also qualifies as an "insured".

52.    The policyholder, Intek, is the only Named Insured under the Empire Policy.

53.    Cruz is not a Named Insured under the Empire Policy.

54.    The Empire Policy explicitly excludes from the definition of an "insured" a lessee or its employee who has permission to use a covered "auto", per the b.6 exception of the "Who Is An Insured" provisions of the policy, which read:

The following are "insureds":

b.    Anyone else while using with your permission a covered "auto" you own, hire or
      borrow except:
      ...
      (6)    (a)    any lessee or sub lessee;
             (b)    Any "employee" or agent of any lessee or sub lessee;
             (c)    Any family member or member of the household of any lessee or
                    sub lessee;
             (d)    Any other person or organization using a covered "auto" with the
                    permission of any person or organization included in (a), (b), or (c)
                    above.

      But, these exceptions do not apply if, by law, this policy is required to provide
      liability insurance to anyone other than as described in b.(4) above, or to any person
      or organization described in b.(6) above.

Empire Policy at Business Auto Coverage Form CA 0001 (03/10), Section II.A.1, *as

amended by* Contingent and Excess Liability Coverage with Interim Liability and Physical

Damage Coverage endorsement (EM 01 60 CW (06-10)), ¶B.

55.    Cruz does not qualify as an "insured" under the plain and unambiguous terms of the Empire

       Policy.

56.    To the extent the Empire Policy may be permissibly reformed by the Court to include Cruz

       as an "insured" pursuant to N.J. Stat. § 45:21-3, then and in that event, the maximum liability

       coverage available to Cruz would be the New Jersey mandatory minimum limits specified

       in N.J. Stat. Ann. § 39:6B-1. *Hanco v. Sisoukraj*, 364 N.J. Super. 41, 45, 834 A.2d 443, 446

       (App. Div. 2003) (citing N.J.S.A. 45:21-3); *General Accident Group of Ins. v. Liberty Mut.

       Ins. Co.*, 191 N.J. Super. 530, 468 A.2d 430 (App. Div. 1983) (since there is no statutory

       requirement for coverage greater than the designated statutory limits, the reformation of a

       policy to conform with the statute requires no greater coverage than the statute itself

       mandates).

57.     Equally so, the Empire Policy expressly states that the maximum liability limits available to a  lessee who qualifies as an "insured" by law (*e.g.*, by statute) is the minimum limit required by the compulsory insurance or financial responsibility law of the jurisdiction where the covered "auto" is being used, which is shown in Item 3. of the Declarations:

> C.      Changes to Section II - Liability Coverage:
>
> 1.      Paragraph C. Limit Of Insurance is replaced with the following:
> ...
> c.      For the lessee, any sub lessee, or any "employee" or agent of either, or any person other than you, your "employees" or agents that this policy is required by law to cover, the Limit of Insurance for Liability Coverage shall be the minimum limit required by any applicable compulsory insurance or financial responsibility law of the jurisdiction where the covered "auto" is being used.  The Limit of Insurance is shown in Item 3. of the Declarations.
> ...

Empire Policy, Contingent and Excess Liability Coverage with Interim Liability and Physical Damage Coverage endorsement (EM 01 60 CW (06-10)), ¶C.

58.     The maximum liability limits potentially available to Cruz, should Cruz qualify as an insured under the Empire Policy by reformation, is the $15,000/$30,000 limits set forth in Item 3 of the declarations of the Empire Policy and as specified in N.J. Stat. Ann. § 39:6B-1.

59.     To the extent the Dump Truck qualifies as a covered auto under the Empire Policy and Cruz is entitled to liability insurance coverage for the claims asserted in the *Hiner* Litigation, the $15,000 "each person" limit of insurance set forth in Item 3 of the declarations of the Empire Policy and as specified in N.J. Stat. Ann. § 39:6B-1 is the most Empire would be obligated to pay on behalf of Jose Cruz and F. Cruz Transport, LLC respecting any settlement of the claims against Cruz or any adverse judgment in the *Hiner* Litigation against Cruz.

60.     Punitive damages are not insurable in New Jersey.

61.   Empire has no obligation to pay any sums respecting that portion of any settlement respecting a punitive damage claim or that portion of any judgment respecting a punitive damage award.

62.   Upon information and belief, one or more of the parties in this action may dispute Empire's insuring obligations in favor of Cruz relative to the claims asserted against Jose Cruz and F. Cruz Transport, LLC in the *Hiner* Litigation.

63.   There exists a substantial, *bona fide*, actual and justiciable dispute regarding Empire's insuring obligations, if any, in favor of Cruz relative to the claims asserted against Jose Cruz and F. Cruz Transport, LLC in the *Hiner* Litigation.  There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**WHEREFORE,** Empire Fire and Marine Insurance Company respectfully requests that this Honorable Court enter:

(a)   An Order declaring that Empire Fire and Marine Insurance Company has no duty to defend or indemnify Jose Cruz and F. Cruz Transport, LLC in the civil action styled *Robert Hiner and Janet Hiner, h/w v. Jose Cruz et al.*, Superior Court Essex County (Law Div.) No. ESX-L-245816 under Empire Fire and Marine Insurance Company Policy No. RSF5525002-02; or, in the alternative,

(b)   An Order declaring that the total maximum liability indemnity limit available to Jose Cruz and F. Cruz Transport, LLC relative to the claims asserted against them in the civil action styled *Robert Hiner and Janet Hiner, h/w v. Jose Cruz et al.*, Superior Court Essex County (Law Div.) No. ESX-L-245816 under Empire Fire and Marine Insurance Company Policy No. RSF5525002-02 is Fifteen Thousand Dollars ($15,000); and

(c)   An order and/or judgment for such other or alternative relief not inconsistent with the claims and causes asserted in this complaint as the Court may deem proper.

**COUNT II**
**DECLARATORY RELIEF AGAINST INTEK AUTO LEASING, INC.**
**(No Duty to Indemnify Contractual Liability or Punitive Damages)**

64.     Plaintiff, Empire Fire and Marine Insurance Company incorporates by reference the foregoing allegations of this Complaint as if the same were set forth herein at length.

65.     The claims asserted against Intek in the *Hiner* Litigation are for:

(a)     "Nuisance/Negligence" (Fifth Count) premised upon allegations that "[t]he subject dump truck was a nuisance per se due to its extraordinarily dangerous condition at the time of its operation," and that the defendants "knew or should have known of the dangerous, illegal and unsafe operation of the dump truck, negligently allowed and entrusted same to be used on the public roadways, and should have taken steps to prohibit same from being operated on public roadways to the detriment to the general public and to plaintiff Robert Hiner", Compl. at ¶¶26, 27;

(b)     "Lease of Unsafe Truck" (Sixth Count) premised upon its alleged "fail[ure] to properly inspect the subject dump truck, as a result of which said entity leased an extraordinarily unsafe dump truck which resulted in an undue risk of injury to others, including plaintiff Robert Hiner." *Id.* at ¶¶30-33;

(c)     "Failure to Maintain Required Insurance" (Seventh Count) which is ostensibly premised upon Intek's alleged contractual obligation to provide insurance coverage to Cruz, to which the underlying plaintiffs claim to be third party beneficiaries. *Id.* at ¶¶35-38; and

-21-

(d)     Punitive damages (Tenth Count) premised upon its alleged willful and wanton conduct and reckless disregard for the safety of others, including Hiner. *Id.* at ¶¶50, 51.

See *Hiner* Litigation Compl. (Exh. I) at Counts V, VI, VII and X.

66.     To the extent the Dump Truck qualifies as a covered "auto" under the Empire Policy, the Empire Policy affords indemnity limits of $2 Million respecting the claims for "Nuisance/Negligence" (Fifth Count) and "Lease of Unsafe Truck" (Sixth Count).  See Empire Policy, Contingent and Excess Liability Coverage with Interim Liability and Physical Damage Coverage endorsement (EM 01 60 CW (06-10)), ¶C.1(d).

67.     There is no indemnity coverage under the Empire Policy for any claim or award of punitive damages (Tenth Count) against Intek as a matter of law and public policy.

68.     Coverage under the Empire Policy for any claim or adverse judgment against Intek based upon or arising out of any contractual liability to procure or maintain  insurance as is or may be alleged in the *Hiner* Litigation is expressly excluded by application of the Contractual Liability Exclusion.

69.     There is no indemnity coverage under the Empire Policy for any claim or adverse judgment against Intek based upon or arising out of any contractual liability to procure or maintain insurance for Cruz.

70.     Upon information and belief, one or more of the parties in this action may dispute Empire's insuring obligations relative to the claims asserted against Intek and/or Cruz in the *Hiner* Litigation.

71.     There exists a substantial, *bona fide*, actual and justiciable dispute regarding Empire's insuring obligations relative to the claims against Intek based upon or arising out of any contractual liability to procure insurance in the *Hiner* Litigation.  There is no adequate remedy, other than that requested herein, by which this controversy may be resolved.

**WHEREFORE,** Empire Fire and Marine Insurance Company respectfully requests that this Honorable Court enter:

(a)     An Order declaring that Empire Fire and Marine Insurance Company has no duty to indemnify Intek, Jose Cruz, or F. Cruz Transport, LLC or otherwise pay any sum respecting any claim based upon or arising out of any contractual liability to procure or maintain insurance or any adverse judgment resulting therefrom in the civil action styled *Robert Hiner and Janet Hiner, h/w v. Jose Cruz et al.*, Superior Court Essex County (Law Div.) No. ESX-L-245816 under Empire Fire and Marine Insurance Company Policy No. RSF5525002-02; and

(b)     An order and/or judgment for such other or alternative relief not inconsistent with the claims and causes asserted in this complaint as the Court may deem proper.

Respectfully Submitted,

By: /s/ Louis A. Bové
LOUIS A. BOVÉ, ESQUIRE
BODELL BOVE, LLC
1845 WALNUT STREET, 11TH FLOOR
SUITE 1100
PHILADELPHIA, PA 19103
TEL: (215) 864-6600
FACSIMILE: (215) 864-6610
lbove@bodellbove.com
*Attorneys for Plaintiff,*
*Empire Fire and Marine Insurance Company*

Date: June 20, 2017

-23-